NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1326

CYNTHIA TOMASETTI, individually and as trustee,[1] & another[2]

vs.

STEVEN PAECHT, individually and as trustee.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Steven Paecht (defendant), a beneficiary and cotrustee of the H & M Paecht Trust (the trust), appeals from a judgment in favor of his cotrustees and siblings, Cynthia Tomasetti and Karen Giombetti (plaintiffs), finding that his option to purchase the property held in the trust had expired and therefore plaintiffs were authorized to accept a third-party's offer to purchase the property. We affirm.

---

[1] Of the H & M Paecht Trust.

[2] Karen Giombetti, individually and as trustee of the H & M Paecht Trust.

[3] Of the H & M Paecht Trust.

Background.  Marilyn H. Paecht (mother) and Harold Paecht (father), both of whom are now deceased, established the trust on June 30, 2000, for the benefit of their three children.  The plaintiffs and the defendant are the decedents' only children, and they are equal beneficiaries and cotrustees of the trust.  The trust holds the property at 65 Broad Bay Road in Center Ossipee, New Hampshire.  On November 25, 2019, following the mother's death, the father amended the trust to include paragraph 3.1(b).  This new provision provided that, upon the father's death, the trustees were required to sell the property.  "First, however, [the property] shall be offered, in writing, to the [father's] children at a value equal to ninety-five percent (95%) of the average of two fair market value appraisals obtained by the Trustee."  "The offer shall be valid for a period of forty-five days following the [father's] death."

The father met with the three children to discuss this amendment.  The defendant asked the father to consider extending the timeline for beneficiary offers beyond forty-five days.  The father refused because he wanted to limit the beneficiary purchase option to the forty-five day period after his death.  At the close of that meeting, the children had notice that the forty-five day period was incorporated into the trust language.

2

The father died on October 30, 2021.  Shortly after the father's death, his attorney[4] provided copies of the trust documents to the three children.  On November 30, 2021, the children met with the father's attorney to discuss the administration of their father's estate and the trust.  During that discussion, the three children agreed that they would delay listing the property for sale until the spring of 2022.  The defendant did not express an interest in purchasing the property at that meeting.  Moreover, none of the children expressed an interest in purchasing the property within the forty-five days after their father's death.

The father's attorney sent the children a status letter dated December 15, 2021, to memorialize the November 30 discussion.  This letter included a specific reference to the forty-five day period:  "As you know, your father's trust contained a provision directing that the property be sold.  This direction was subject to [a] 45-day period starting with the date of death during which the property could be offered to one of you."  The letter also memorialized the agreement that the children would delay putting the house on the market until the

---

[4] The father was represented by a law firm in connection with the trust.  Several attorneys in the firm worked on this matter.  For simplicity's sake, we refer to all of them as "the father's attorney."

3

spring. Each of the three children received a copy of this letter and signed it to indicate their agreement.

The children had a teleconference with the father's attorney on March 19, 2022. At that time, none of the children expressed an interest in purchasing the property, asked for appraisals, or submitted written offers. But the children did discuss the fact that a neighbor of the property made an offer to purchase it for $600,000, as is, with no contingencies, no broker's fee, and placing no obligation on the trust to repair the septic system.[5] At the end of the meeting, the defendant alerted the plaintiffs and the father's attorney that he was represented by outside counsel, who would be in touch with them. The defendant's attorney contacted the father's attorney to confirm his representation of the defendant, but did not indicate that the defendant had any interest in making an offer on the property.

In his capacity as a cotrustee, the defendant blocked a sale to the neighbor. The plaintiffs then made an offer to purchase the property for $600,000. The defendant also refused to accept that offer.

---

[5] The neighbor sent a written offer to the children the next day.

4

Soon after the March 19 meeting, the children attended a Zoom meeting with the defendant's attorney and the father's attorney. At that time, the defendant requested that the father's attorney obtain two appraisals, ostensibly so he could make an offer on the property. The father's attorney obtained the appraisals within approximately two weeks and immediately sent them to the parties. The father's attorney also sent the appraisals to the defendant's attorney via e-mail on April 7, 2022, and the defendant's attorney forwarded them to the defendant that same day. The father's attorney had approximately thirty e-mail exchanges with the defendant's attorney up to that point, all using the same address, without incident. Both appraisals, from independent assessors, valued the property at $540,000.

On May 20, 2022, the father's attorney sent a letter to the defendant by e-mail in care of his attorney notifying the defendant of his "right to make an offer on the property for 95% of the two appraisals, $513,000."[6] Plaintiff Tomasetti testified that she and her sister had decided to "giv[e] him a second chance" at the forty-five day time period to make an offer to

_____

[6] Pursuant to the terms of the trust, the children's option to purchase the property at ninety-five percent of its appraised value had expired forty-five days after the father's death on October 30, 2021.

5

purchase the property. The father's attorney sent this letter to the e-mail address that the defendant's attorney had used in their electronic communication prior to that point.[7] The defendant's attorney acknowledged receipt of this e-mail message but claimed that it was delivered to his e-mail program's "spam" folder, and thus he did not receive actual notice of the written offer until August 5, 2022, when his assistant discovered the message. When the defendant's attorney purportedly learned of the e-mail message, he wrote to the father's attorney and asserted that the defendant had the right to make an offer within forty-five days of August 5. The plaintiffs rejected that position, asserting that the forty-five day period had started on May 20 and had already elapsed. Instead, the plaintiffs wanted to accept a renewed offer from the neighbor for $600,000. Again, the defendant blocked the sale.

To date, the defendant has never made a formal offer to purchase the property for any amount of money. The trust still holds the property and has incurred significant expenses during the pendency of this case.

---

[7] The father's attorney also mailed this letter to the defendant's attorney at an incorrect address, and thus the defendant's attorney never received that physical copy of the letter.

After a jury-waived trial, a judge of the Probate and Family Court found that the defendant had waived the right to purchase the property pursuant to the trust. Furthermore, the judge found that the cotrustees were authorized to accept the neighbor's $600,000 offer for the property, and that if the defendant refused to execute the necessary documents for that purchase, he would be removed as a cotrustee.

Discussion. 1. Standard of review. When reviewing a bench trial decision, we accept the judge's findings of fact unless clearly erroneous. Board of Registration in Med. v. Doe, 457 Mass. 738, 742 (2010). Clear error occurs when, "although there is evidence to support [a finding of fact], the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed" (quotation and citation omitted). Marlow v. New Bedford, 369 Mass. 501, 508 (1976). Legal conclusions, on the other hand, are reviewed de novo and without deference to the trial judge's decision. See Trace Constr., Inc. v. Dana Barros Sports Complex, LLC, 459 Mass. 346, 351 (2011).

2. First opportunity to purchase. The defendant argues that the trust was required to send written notice of the purchase price to the beneficiaries as a condition precedent to the running of the forty-five day purchase option window and

that the beneficiaries' decision to delay disposing of the property until the spring of 2022 was not a waiver of his right to purchase the property.

The defendant's interpretation of the trust contradicts his father's intent. "A trust should be construed to give effect to the intention of the [donor] as ascertained from the language of the whole instrument considered in the light of the attendant circumstances" (quotation and citation omitted). Schroeder v. Danielson, 37 Mass. App. Ct. 450, 453 (1994). In this case, the father's intent in tying the forty-five day beneficiary purchase option window to the date of his death was clear. He wanted his children to have the opportunity to purchase the property under market value, but he also wanted his estate settled quickly to minimize trust expenses in managing the property, and to prevent strife between his children in the aftermath of his death. The defendant's interpretation of the trust to require notice of the purchase price before triggering the commencement of the forty-five day purchase option window was contrary to that intent.

Second, the defendant had clear notice of the terms of the trust long before his father's death. The defendant was not merely a beneficiary, but a cotrustee. In that role, he had received notice of the terms of the trust, including the fact that the forty-five day purchase option window began upon his

8

father's death, and was reminded of it multiple times.  In fact, he had asked his father to extend that window and his father had refused.  Accordingly, he had clear notice that, if he wanted to exercise his purchase option, he had to request appraisals and then make a purchase offer within forty-five days after his father's death.[8]

3.  Second opportunity to purchase.  The judge found that the cotrustees acquiesced in "reset[ting] the 45-day clock" by authorizing the father's attorney to obtain two appraisals of the property and then to send a written notice to the defendant's attorney on May 20, 2022, stating that the defendant could exercise an option to purchase the property for $513,000 within forty-five days.  But because the defendant did not make an offer to purchase the property within forty-five days from May 20, 2022, the judge found that his option expired for a second time.  The defendant argues this finding was clearly erroneous.  We are not persuaded.

The defendant concedes that the trust fulfilled the written notice condition on May 20, 2022, "when the [father's attorney]

---

[8] Because we affirm the judge's ruling that the defendant was required to make an offer to purchase the property within forty-five days of his father's death, we do not address the judge's alternative ruling that the defendant waived any condition precedent to the commencement of the forty-five day purchase option window.

sent the requisite letter. . . along with the appraisals and the $513,000 purchase price." Moreover, it is undisputed that the defendant's attorney received this notice by e-mail, and thus that the father's attorney sent it to the correct e-mail address. The defendant's attorney contended only that his e-mail program filtered that e-mail message to a "spam" folder and that he discovered it on August 5, 2022.

In support of her finding that the second purchase option window expired forty-five days after May 20, 2022, the judge found that the May 20, 2022, letter "restart[ed] the 45 day bid period." She also found that the letter "was sent by e-mail to an address provided by [the defendant's attorney]" and "[d]elivery of [the letter] was confirmed." The judge noted that these same two attorneys "had previously communicated by e-mail without incident." Indeed, the father's attorney sent the two appraisals to the defendant's attorney by e-mail on April 7, 2022, the defendant's attorney acknowledged he had received them that same day, and the defendant acknowledged that his attorney forwarded them to him that same day. We conclude that the judge's finding that the forty-five day beneficiary purchase option window restarted on May 20, 2022, and expired forty-five

days later was well-supported and certainly not clearly erroneous.[9]

Judgment affirmed.

By the Court (Ditkoff, D'Angelo & Wood, JJ.[10]),

*Paul Little*

Clerk

Entered:  December 2, 2025.

---

[9] The defendant also argues that the plaintiffs engaged in bad faith by stating that they would not accept his offer to purchase the property for $513,000.  In fact, the defendant never made such an offer.  It is not bad faith for the plaintiffs to express an unwillingness to accept a hypothetical, untimely, under-market-value offer for the property.  See G. L. c. 203E, § 804 ("A trustee shall administer the trust as a prudent person would, considering the purposes, terms and other circumstances of the trust.  In satisfying this standard, the trustee shall exercise reasonable care, skill and caution").

[10] The panelists are listed in order of seniority.